IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

NOEL VINCENT THOMAS                                                           PLAINTIFF

v.                              CIVIL NO. 5:25-05222-TLB

WALMART, INC., KEVIN BOLEN, LISSET CHAO,
JOHNATHAN BAKER, RUBENSTEIN LAW FIRM,
IRWIN AST LAW FIRM, AND NICHOLE GARCIA                    DEFENDANTS

## REPORT AND RECOMMENDATION OF A MAGISTRATE JUDGE

On November 3, 2025, Plaintiff, Noel Vincent Thomas ("Plaintiff"), a resident of Tampa,

Florida, filed a complaint against Defendants Walmart, Inc., Walmart employees Kevin Bolen,

Johnathan Baker, and Liset Chao, and Miami, Florida, law firms Rubenstein and Irwin Ast along

with Nichole Garcia, a paralegal at Irwin Ast Law Firm. (ECF No. 2). Plaintiff also filed an

application to proceed *pro se* and *in forma pauperis* (IFP) and the undersigned previously granted

the motion and directed Plaintiff to file an Amended Complaint. (ECF Nos. 3, 6). Plaintiff's

Amended Complaint was filed November 17, 2025.  (ECF No. 7).  Pursuant to the provisions of

28 U.S.C. § 636(b)(1) and (3), the Honorable Judge Timothy L. Brooks, Chief United States

District Judge, referred this case to the undersigned for preservice screening of Plaintiff's

Amended Complaint and for Report and Recommendation. (ECF No. 4).

### I.       PLAINTIFF'S AMENDED COMPLAINT

Plaintiff's Amended Complaint has its genesis in a slip and fall Plaintiff suffered at a

Walmart store located at 8220 N. Dale Mabry Highway in Tampa, Florida, on December 16, 2023,

wherein he allegedly injured his arm and shoulder.  (ECF No. 7, pp. 5, 10).  Plaintiff says that after

this fall and during 2024, he had some email communications with representatives of Walmart and

received letters but he refused to speak with anyone on the telephone about his claim, describing that "he refused to communicate legal issues over the phone" because "phone calls were an unreliable source of communication" which would not leave any "paper trail." (ECF No. 7, ¶¶ 18, 20, 23). Emails were exchanged between Plaintiff and Separate Defendant Baker at Walmart about the process of submitting medical bills for treatment sustained by Plaintiff, and Plaintiff provided information about seeking medical care at the Veteran's Administration (VA) and challenged Baker about prior communications with Defendant Bolen who had allegedly "decided on the matter." (ECF No. 7, pp. 6-9).

While Plaintiff has not named the VA as a defendant, Plaintiff spends several pages of his Amended Complaint complaining about the VA's apparent lack of treatment and/or insufficient treatment of his sustained and/or exacerbated injuries from December 16, 2023; the VA's intentional delay of Plaintiff's ability to proceed with his Walmart claim; and the VA's alleged falsification of his medical records. Plaintiff also recounts complaints he made to the VA's Patient Advocate Office and Office of Inspector General. (ECF No. 7, ¶¶ 32-55).

Plaintiff then describes that he began working with Irwin Ast Law Firm (Irwin) in October 2024, and with Nichole Garcia at the firm, to obtain medical treatment for his injuries (without any success) and to pursue litigation prior to the expiration of the statute of limitations but that the relationship with the law firm deteriorated without a lawsuit or claim resolution with Walmart. (ECF No. 7, ¶¶ 59-67). Plaintiff then began trying to obtain his case file from Irwin, who advised Plaintiff on February 26, 2025, that they could no longer represent him or pursue his claim. (ECF No. 7, ¶¶ 68-69). Plaintiff alleges Irwin was "conspiring" with, and aiding and abetting Walmart in order for the statute of limitations to expire; Plaintiff also alleges the law firm(s) committed "legal malpractice, racism and fraud." (ECF No. 7, ¶¶ 66, 69, 71). Not until Paragraph 69 does

Plaintiff mention the Rubenstein Law Firm (Rubenstein), and although the firm is mentioned thereafter, it is not entirely clear whether any attorney-client relationship was ever formed between Plaintiff and Rubenstein; Plaintiff first describes that both law firms may have represented him but Rubenstein "agreed to drop the case" which was a "conflict of interest." (ECF No. 7, ¶¶ 69, 73). Subsequently, Plaintiff alleges that Rubenstein was his "first point of contact" but "they told him that his case did not meet their basic acceptable standard of requirements for them to litigate Plaintiff's concerns and rejected the case and referred it to Irwin Ast law firm." (ECF No. 7, ¶ 76).

Plaintiff then describes filing a complaint against his counsel with the Florida Bar Association and shares many of his complaints, including undecipherable allegations regarding Nichole Garcia's representations and her role at the two law firms, and including allegations that both law firms were actively conspiring with Walmart and against Plaintiff. (ECF No. 7, ¶¶ 79-101). Plaintiff adds his complaints about the Florida judiciary with respect to multiple recusals, his inability to get a JAWS (Job Access with Speech) hearing, abuses of the judicial process, and numerous delays he experienced with respect to an action he filed in the Hillsborough County Circuit Court on July 21, 2025. (ECF No. 7, ¶¶ 102-112). Plaintiff describes service of his Complaint and requests for various proceedings during August and September 2025 in the Hillsborough litigation; Plaintiff alleges threats, hostilities and perjury but it is not entirely clear whether his Florida litigation was resolved, dismissed or remains pending. (ECF No. 7, ¶¶ 113-129).

Plaintiff makes allegations of negligence (ECF No. 7, ¶¶ 130-148), civil conspiracy (¶¶ 149-166), fraud (¶¶ 167-179), and race discrimination (¶¶ 180-191). Plaintiff seeks not less than $4,000,000 in compensatory damages, punitive damages, costs and fees. (ECF No. 7, ¶¶ 192-196).

## II.    APPLICABLE STANDARD OF REVIEW

The federal IFP statute, 28 U.S.C. § 1915, is designed to ensure meaningful access to federal courts for people unable to pay the costs of bringing an action. *See Neitzke v. Williams,* 490 U.S. 319, 324 (1989). When a party proceeds IFP*,* however, a Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous or malicious; (2) fail to state a claim upon which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B)(i-iii). Dismissals under section 1915 are often made on the court's own initiative "prior to the issuance of process, so as to spare prospective defendants the inconvenience and expenses of answering" meritless complaints. *Neitzke,* 490 U.S. at 324.

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke*, 490 U.S. at 325. An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather than to vindicate a cognizable right. *Spencer v. Rhodes,* 656 F. Supp 458, 464 (E.D.N.C. 1987); *In re Tyler,* 839 F.2d 1290, 1293-94 (8th Cir. 1988).  A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  "[I]f the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004).

4

### III.    ANALYSIS

**Cause of Action 1, Negligence Claim:**    Arkansas' law of negligence requires as essential elements that Plaintiff show that a duty was owed, and that the duty was breached. *Marlar v. Daniel,* 368 Ark. 505, 247 S.W.3d 473 (2007).  To make a prima facie cause of action based on negligence, Plaintiff must show that he sustained damages, that the defendant was negligent, and that such negligence was the proximate cause of the damages. *Earnest v. Joe Works Chevrolet, Inc.*, 295 Ark. 90, 92, 746 S.W.2d 554, 555 (1988). To prove negligence, a party must show that the defendant has failed to use the care that a reasonably careful person would use under circumstances like those shown by the evidence in the case. *Id.*

A negligence claim under Florida law similarly has four elements: (1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff.  *Bartsch v. Costello*, 170 So. 3d 83, 86 (Fla. Dist. Ct. App. 2015), citing *Clay Elec. Coop., Inc. v. Johnson,* 873 So.2d 1182, 1185 (Fla. 2003) (quoting *Prosser & Keaton on the Law of Torts* 164–65 (W. Page Keeton ed., 5th ed. 1984)).

Whether Arkansas or Florida substantive law ultimately applies (as there appears, on first glance, to be no conflict of law) to Plaintiff's negligence claim is a determination which can be made in the future.  The undersigned finds that Plaintiff timely has stated a claim against Walmart, Inc. for negligence related to his fall inside a Tampa, Florida, store at 8220 N. Dale Mabry Highway on December 16, 2023.  Plaintiff's Complaint – filed herein on November 3, 2025, and alleging all elements of a prima facie negligence claim – tolled both the Florida and Arkansas statute of limitations.  *See* Section 95.11(3)(a), Fla. Stat. (2004) (4 years from when last element of negligence cause of action occurs); Ark. Code Ann. 16-56-105 (Repl. 2005) (3 years from

occurrence).  The undersigned notes that, if properly and timely served with process under the Federal Rules of Civil Procedure, this district court can arguably exercise subject matter jurisdiction over Walmart, Inc., a citizen and resident of Arkansas.  Plaintiff has pled a basis for diversity jurisdiction under 28 U.S.C. § 1332 – Plaintiff's citizenship (Florida) is diverse from Walmart Inc.'s citizenship (Arkansas/Delaware), and Plaintiff's Amended Complaint seeks more than $75,000 in damages.

Plaintiff's Amended Complaint does not, however, state a negligence claim against Defendants Kevin Bolen or Johnathan Baker, who appear to have been acting in their role as Walmart claims' adjusters following Plaintiff's 2023 slip and fall within the store.  And while identified as a Defendant, Plaintiff's Amended Complaint makes no factual allegations of any kind against Lisset Chao, who is described by Plaintiff as an Associate at the Walmart store where Plaintiff fell.

For these reasons, the undersigned recommends that Plaintiff be permitted to proceed with a claim of negligence against Walmart, Inc. related to Plaintiff's slip and fall incident on December 16, 2023, but recommends that claims of negligence against Kevin Bolen, Johnathan Baker and Lisset Chao be dismissed for failure to state a claim.

**Cause of Action 2, Civil Conspiracy:**  To prove a civil conspiracy, Plaintiff must show that two or more persons have combined to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive or immoral, but by unlawful, oppressive or immoral means, to the injury of another. *Faulkner v. Arkansas Children's Hosp.,* 347 Ark. 941, 961–62 (2002), citing *Chambers v. Stern,* 347 Ark. 395, 64 S.W.3d 737, (2002); *Dodson v. Allstate Ins. Co.,* 345 Ark. 430, 47 S.W.3d 866, (2001); *Mason v. Funderburk,* 247 Ark. 521, 446 S.W.2d 543 (1969). A civil conspiracy is not actionable in and of itself, but a recovery

6

may be had for damages caused by acts committed pursuant to the conspiracy. *Chambers v. Stern, supra; Dodson v. Allstate Ins. Co., supra.* A civil conspiracy is an intentional tort which requires a specific intent to accomplish the contemplated wrong. *Id.*

In *Dodson v. Allstate Ins., supra,* the Arkansas Supreme Court found that a corporation cannot conspire with itself, since that defeats the requirement of a combination of two or more persons acting to accomplish some unlawful or oppressive purpose. Thus, to sustain a claim for a civil conspiracy where agents of a corporation are involved, it is necessary to show that one or more of the agents acted outside of the scope of their employment, to render them a separate "person" for purposes of the conspiracy. *Dodson,* 345 Ark. at 445, 47 S.W.3d at 876. Corporate agents could "not be held liable for civil conspiracy in the absence of evidence showing that they were acting for their own personal benefit rather than for the benefit of the corporation." *Dodson,* 345 Ark. at 445, 47 S.W.3d at 876 (citations omitted).

The undersigned finds Plaintiff's Amended Complaint with respect to civil conspiracy is insufficient. Walmart cannot conspire with itself, and Plaintiff has not pled that either Kevin Bolen or Johnathan Baker were acting for their own personal benefit and/or outside the scope of their employment, and together with Walmart in an oppressive or unlawful manner toward Plaintiff. The pleadings similarly do not allege any factual or legal basis for a civil conspiracy between Walmart and the VA; Plaintiff's Amended Complaint does not even plead contact between Walmart and the VA much less that these entities conspired to accomplish an unlawful or oppressive purpose. The undersigned recommends that Plaintiff's conspiracy claims against Walmart, Kevin Bolen and Johnathan Baker be dismissed as the allegations failed to state a claim.

Plaintiff's Amended Complaint then pivots to allegations of "fraudulent conduct of retained law firms," and the "collaboration" between Walmart and these law firms to "share crucial

information," "conceal information," and "hinder any real progress in Plaintiff's case." (ECF No. 7, ¶¶ 156-156-166). Plaintiff suggests the Florida lawyers committed perjury. (ECF No. 7, ¶¶ 123-129). These allegations are all insufficient because they are conclusory. The only cogent allegations are that Nichole Garcia, the paralegal, was inquiring about the status of Plaintiff's medical treatment (knowing that he was not receiving treatment from the VA because the VA was conspiring to deny him care), and that Ms. Garcia improperly sent a preservation letter to Walmart in 2024. These are not allegations of conspiracy between the law firms and Walmart. Plaintiff's remaining conspiracy allegations relate to the law firms' representation of him and descriptions of his efforts to retrieve his file once the law firms had either withdrawn or been terminated by Plaintiff. None of these allegations, read in the light most favorable to Plaintiff, state a cause of action for civil conspiracy.

Not only are these allegations insufficient to plead a civil conspiracy between Walmart and either of the Florida law firms and/or Ms. Garcia, but Plaintiff's Amended Complaint importantly fails to "plead sufficient facts to support a reasonable inference that the [Florida] defendants can be subjected to jurisdiction with the state." *Creative Calling Sols., Inc., v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015). Personal jurisdiction can be specific or general. *Daimler AG v. Bauman,* 571 U.S. 117, 127 (2014). "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011) (cleaned up). As the United States Supreme Court recently affirmed, "[t]he primary focus of [the] personal jurisdiction inquiry is the

defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.,* 582 U.S. 255, 262 (2017) (citations omitted).

This Court discerns no basis for the exercise of general jurisdiction over any of the Florida Defendants and turns to analyze whether Plaintiff can establish specific jurisdiction, requiring "a relationship between the forum, the cause of action, and the defendant." *Myers v. Casino Queen, Inc.,* 689 F.3d 904, 912 (8th Cir. 2012) (citation omitted); *accord Bristol-Myers Squibb,* 137 S. Ct. at 1780 (for specific jurisdiction, "the suit must arise out of or relate to the defendant's contacts with the forum") (cleaned up). This relationship exists "when the defendant purposely directs its activities in the forum state and the litigation results from injuries relating to the defendant's activities in the forum state." *Myers,* 689 F.3d at 912–13 (citation and internal quotation marks omitted). The relationship between a defendant's contacts and the cause of action is not restricted to a proximate cause standard but should consider the "totality of the circumstances." *Id.* (quoting *K-V Pharm. Co. v. J Uriach & CIA, S.A.,* 648 F.3d 588, 592-93 (8th Cir. 2011)).

For the exercise of specific personal jurisdiction over an out-of-state defendant such as the law firms or paralegal identified in Plaintiff's Amended Complaint, due process requires the out-of-state defendant have sufficient contacts with the forum state so that the exercise of jurisdiction over the out-of-state defendant does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945) (citations omitted). Generally, "those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts." *J. McIntyre Mach., Ltd. v. Nicastro,* 564 U.S. 873, 881 (2011) (plurality opinion). This "minimum contacts" or due process inquiry has been distilled to consider whether an out-of-state defendant has "warning that his activities may result in his being haled into court in a particular jurisdiction," particularly through the defendant having "invoke[d] the benefits and

9

protections of that jurisdiction by purposefully availing himself of the privilege of conducting those activities [in the forum state]." *Porter v. Berall,* 293 F.3d 1073, 1075 (8th Cir. 2002) (citation omitted). In this way, the foundation for specific jurisdiction, consistent with due process, is "a nexus between the forum state itself, the defendant, and the cause of action." *Lawhead v. Law Offices of Joseph Martin Carasso*, 482 F. Supp. 3d 867, 872 (D. Minn. 2020) (citing *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014)). The out-of-state defendants and the forum state must be "substantial[ly] connect[ed]" for the exercise of the forum state's jurisdiction to satisfy due process. *Porter,* 293 F.3d at 1075-76 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). A defendant's minimum contacts with the forum state "must exist either at the time the cause of action arose, the time the suit was filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Johnson v. Woodcock,* 444 F.3d 953, 955-56 (8th Cir. 2006) (quoting *Pecoraro v. Sky Ranch for Boys, Inc.,* 340 F.3d 558, 562 (8th Cir. 2003)).

To evaluate whether a defendant has sufficient minimum contacts with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment, the Eighth Circuit has established the following five factors courts should consider: (1) the nature and quality of a defendant's contacts with the forum state, (2) the quantity of a defendant's contacts with the forum state, (3) the relation of the cause of action to the contacts with the forum state, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience of the parties. *Dever,* 380 F.3d at 1073-74. The first three factors bear significant weight in the jurisdictional analysis. *Id.* at 1074.

Plaintiff's Amended Complaint pleads no facts supportive of this Court's exercise of personal jurisdiction over Defendants Rubenstein Law Firm, Irwin Ast Law Firm or Nichole Garcia, each identified in Plaintiff's pleadings as residents and citizens of the State of Florida, as there are no contacts of any kind alleged between these Defendants and Arkansas.  (ECF No. 7, ¶¶

10

10-12).  Plaintiff has not set forth facts to show that any of these Florida Defendants "ha[ve] purposefully directed [their] activities at [Arkansas] residents, and [that] the claim of this suit either 'arises out of' or 'relates to' these activities" in a manner that satisfies due process. *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 707 (8th Cir. 2003) (cleaned up).  To the contrary, all allegations contained in the Plaintiff's Amended Complaint (including those described as conspiratorial) are premised upon conduct entirely occurring in Florida and between Florida residents about a claim which occurred in Florida.

For these reasons, the undersigned recommends that Plaintiff's conspiracy claims against all Defendants be dismissed, for failing to state a claim (Walmart, Kevin Bolen and Johnathan Baker) and for lack of jurisdiction (all Florida Defendants).

**Cause of Action 3, Fraud:**   Plaintiff contends that Walmart "intentionally falsified and fabricated the incident report," engaged in the deceptive practice of trying to get Plaintiff to speak with Kevin Bolen by telephone and sent "fabricated letters" to Plaintiff to "coerce" Plaintiff into speaking by telephone about his claim, followed by "fabricated emails" from Johnathan Baker to encourage Plaintiff to speak by telephone.  (ECF No. 7, ¶¶ 167-170).

To establish fraud under Arkansas law, Plaintiff must establish: (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the misrepresentation; (4) justifiable reliance on the misrepresentation; and (5) damage suffered as a result of the reliance. *Bennett v. Ballow*, 2022 Ark. App. 311 (2022), citing *Worley v. City of Jonesboro,* 2011 Ark. App. 594 (2011).

While Plaintiff's Amended Complaint includes conclusory allegations that emails and letters and incident report were "fabricated," Plaintiff does not identify what material facts were falsely represented or that Plaintiff justifiably relied upon any of those false representations to his detriment or that Plaintiff has been damaged because of reliance upon these allegedly "fabricated" materials. To the contrary, Plaintiff seems to be suggesting that Walmart's adjusters wanted to speak with Plaintiff via telephone about his claim but Plaintiff – believing this form of communication to be unreliable – refused to talk on the telephone about his claim despite their "fabricated" letters and emails. With respect to the alleged "fabricated incident report," Plaintiff indicates that his primary complaint is that Walmart required him to complete the incident report "knowing that he was injured and confused…." (ECF No. 7, ¶ 184). Importantly, Plaintiff has not pled that he relied upon any alleged fabrication to his detriment. The undersigned recommends that Plaintiff's fraud claims against Walmart, Kevin Bolen and Johnathan Baker be dismissed as failing to state a claim.

Plaintiff next alleges that when he retained the law firms of Irwin Ast and Rubenstein in October 2024, they "fraudulently confiscated" and shared Plaintiff's "personal and medical documents" with Walmart and assigned paralegal Nichole Garcia to handle Plaintiff's case which was outside her scope; Plaintiff alleges that Ms. Garcia sent him misleading and fraudulent communications and that the law firm sent him multiple false and fabricated letters before unlawfully retaining his file. (ECF No. 7, ¶¶ 171-179). While wholly insufficient to establish a prima facie case of fraud, Plaintiff's conclusory allegations against the Florida law firms and Ms. Garcia necessarily fail for lack of specific jurisdiction by this Court over these Defendants as discussed above. And although not entirely clear, Plaintiff appears to have filed litigation against these Defendants in Florida state court. (ECF No. 7, ¶ 114).

The undersigned thus recommends that Plaintiff's fraud claims against the Florida defendants be dismissed as this Court lacks jurisdiction over them.

**Cause of Action 4, Race Discrimination**:    In this section of his Amended Complaint, Plaintiff rehashes his prior allegations, characterizing them as violations of civil rights laws and as racial crimes.  (ECF No. 7, ¶¶ 180-191).  Plaintiff ascribes the motivation for Walmart's actions in denying/delaying his negligence claims to "racial bias" and the motivation for the Florida law firms' treating him "completely different than that of a white client" because of "racism," "contempt for darker people," "bias," "racial bias," "racial profiling," and "disregard[ing] black people['s] civil rights."  (ECF No. 7, ¶¶ 180-191).

Although Plaintiff does not identify any legal basis for his discrimination claims, the undersigned presumes he seeks relief under 42 U.S.C. § 1981.  "Section 1981 does not provide a general cause of action for race discrimination if in fact it occurred." *Youngblood v. Hy–Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001), c*ert. denied,* 535 U.S. 1017 (2002). Rather, the plaintiff must point to violation of some specific right protected by § 1981. *See Williams v. Lindenwood Univ.*, 288 F.3d 349, 355 (8th Cir. 2002) (an element of the plaintiff's prima facie case is a showing that "the discrimination concerned an area enumerated by the statute"); *Youngblood,* 266 F.3d at 855 (the plaintiff was required to point to interference with some contractual relationship to bring a claim under the right-to-contract provisions of § 1981).

Assuming Plaintiff could properly allege he was deprived of his right to contract[1] with Walmart via settlement of his claims, the undersigned notes that Plaintiff's negligence claim has

---

[1] In pertinent part, "[t]he purpose of 42 U.S.C. § 1981 is to prohibit discrimination in the 'performance, modification and termination of contracts' and to protect 'the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.'" *Williams v. Lindenwood Univ.,* 288 F.3d 349, 355 (8th Cir. 2002); *Youngblood,* 266 F.3d at 854 ("Section 1981 provides

not been extinguished, and it is recommended herein that Plaintiff be permitted to proceed with his negligence claim against Walmart in the Western District of Arkansas. Even if Plaintiff – who describes himself as a resident of Tampa, Florida, who is a U.S. Military veteran living in HUD-VASH housing – is also a member of a protected class, his Amended Complaint does not identify as being part of a protected class and it does not describe how he has been damaged by Walmart because of his race. And with respect to the Florida Defendants, this racial discrimination claim suffers the same fatal flaw discussed herein – even if viable, this Court exercises no jurisdiction over the Florida Defendants.

The undersigned recommends that Plaintiff's claims for race discrimination claims be dismissed for failing to state a claim (Walmart, Kevin Bolen and Johnathan Baker), and lack of jurisdiction (Florida Defendants).

## IV.    CONCLUSION

For these reasons, it is recommended:

- That Plaintiff be permitted to proceed against Walmart, Inc. for his claim of negligence arising from his slip and fall incident on December 16, 2023, at Walmart's store located at 8220 N. Dale Mabry Highway in Tampa, Florida; that Plaintiff be permitted to file a Second Amended Complaint to concisely plead this claim; and that Plaintiff be permitted to obtain a summons from the Clerk of Court for Walmart, Inc.

---

that all persons shall have the same right to 'make and enforce contracts.' *See* 42 U.S.C. § 1981(a)). In 1991, Congress expanded the scope of Section 1981 to include the right to 'the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.' *See* 42 U.S.C. § 1981(b)."). A claim based on these provisions of § 1981 is a "right-to-contract" claim. *See, e.g., See, e.g., Bediako v. Stein Mart, Inc.,* 354 F.3d 835, 839 (8th Cir. 2004); *Youngblood,* 266 F.3d at 854 (describing such a claim as a "right to contract" claim).

- That Plaintiff's claims of civil conspiracy, fraud and race discrimination against Walmart, Inc. be dismissed without prejudice for failure to state a claim.

- That all of Plaintiff's claims against Kevin Bolen, Johnathan Baker and Lisset Chao be dismissed without prejudice for failure to state any claim.

- That all of Plaintiff's claims against Rubenstein Law Firm, Irwin Ast Law Firm and Nichole Garcia be dismissed without prejudice as this Court lacks jurisdiction over these Defendants.

**Status of Referral:   Entry of this Report and Recommendation terminates the referral.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**RECOMMENDED** this 6th day of January 2026.

_Christy Comstock_
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE